# Exhibit A



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

SOP-19.1
(10/14)

**SERVICE OF PROCESS, NOTICE, ORDER OR DEMAND**
**ON THE CLERK OF THE STATE CORPORATION COMMISSION**
**AS STATUTORY AGENT**

1. Service on the Clerk of the State Corporation Commission relates to the following proceeding:

   Style of Proceeding: Christoper Sheldon, et al. v. Nichols Transport Co., et al.
   _____
   (e.g. name of the plaintiff vs. name of the defendant, or In the matter of..., etc.)

   Proceeding Pending in: City of Roanoke Circuit Court
   _____
   (Jurisdiction)                          (Name of Court or Tribunal)

   Court's Case / Matter No.: CL16-1171
   _____

   Court's Address: 315 Church Ave., SW, Roanoke, Virginia 24016
   _____
   (Mailing Address)

2. Service on the Clerk of the State Corporation Commission is being made pursuant to Virginia Code §§ 12.1-19.1 and **(mark the appropriate box):** [See the Instructions for more information.]

   | | | | |
   |---|---|---|---|
   | ☐ 13.1-637 B | ☐ 13.1-928 B | ☐ 38.2-801 | ☐ 50-73.58:1 D |
   | ☐ 13.1-758 F | ☐ 13.1-929 E | ☐ 38.2-809 | ☐ 50-73.59 E |
   | ☑ 13.1-766 B | ☐ 13.1-930 D | ☐ 38.2-1216 | ☐ 50-73.134 F |
   | ☐ 13.1-767 A 4 | ☐ 13.1-1018 B | ☐ 38.2-5103 | ☐ 50-73.135 G |
   | ☐ 13.1-768 D | ☐ 13.1-1056 A 4 | ☐ 50-73.7 B | ☐ 50-73.139 |
   | ☐ 13.1-836 B | ☐ 13.1-1056.1 C | ☐ 50-73.58 A 4 | ☐ 50-73.140 |
   | ☐ 13.1-920 A 4 | ☐ 13.1-1057 E | | |

   ☐ Other Virginia Code section or statutory authority (specify): _____

3. Pursuant to the foregoing legal authority, the Clerk of the Commission is being served as statutory agent of Nichols Transport Co., Inc.
   _____ ,
   (name of defendant / business entity)

   whose mailing address for this service of process is [One address per form. See Instructions.]
   3797 E. Highway 76, Mullins, South Carolina 29574-7304
   _____
   (number / street, P.O. Box, Rural Route, etc.)        (city or town)        (state)        (zip code)

4. The Clerk's Office should mail its receipt (or rejection letter) to:

   Name: Lichtenstein Law Group, PLC
   _____

   Attn: Carrol M. Ching
   _____

   Address: 101 S. Jefferson St., Suite 400, Roanoke, VA 24011
   _____
   (number / street, P.O. Box, Rural Route, etc.)        (city or town)        (state)        (zip code)

   Telephone No: (540) 343-9711          Email: carrol.ching@lichtensteinlawgroup.com
   (optional)                                            (optional)

**THREE COPIES OF <u>THIS</u> FORM MUST BE SUBMITTED**
**WITH TWO COPIES OF THE PAPERS TO BE SERVED**

**REVIEW THE INSTRUCTIONS BEFORE SUBMITTING THIS FORM**

# COMMONWEALTH OF VIRGINIA



## ROANOKE CITY CIRCUIT COURT
Civil Division
315 CHURCH AVENUE, SW
ROANOKE VA 24016
(540) 853-6702

Virginia:
In the ROANOKE CITY CIRCUIT COURT

Proof of Service

Case number: 770CL16001171-00
Service number: 002
Service filed: June 09, 2016
Judge:
Attorney: CHING, CARROL M
540-345-9543

Served by: ATTORNEY
Style of case: CHRISTOPHER SHELDON vs NICHOLS TRANSPORT COMPANY INC
Service on: NICHOLS TRANSPORT COMPANY INC
CLERK OF THE STATE CORPORATION
COMMISSION
TYLER BUILDING
1300 E MAIN STREET
RICHMOND VA 23219

Proper attire required in Court Rooms
NO shorts
NO halters/tank tops
NO flip-flop shoes
NO t-shirts
NO hats
NO food, drinks or gum
NO cell phones in Courthouse

Instructions:

Returns shall be made hereon, showing service of Summons issued Monday, May 15, 2017 with a copy of the
Complaint filed Thursday, June 09, 2016 attached.

Hearing date :
Service issued: Monday, May 15, 2017

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



ROANOKE CITY CIRCUIT COURT
Civil Division
315 CHURCH AVENUE, SW
ROANOKE VA 24016
(540) 853-6702

Proper attire required in Court Rooms
NO shorts
NO halters/tank tops
NO flip-flop shoes
NO t-shirts
NO hats
NO food, drinks or gum
NO cell phones in Courthouse

Summons

To: NICHOLS TRANSPORT COMPANY INC
CLERK OF THE STATE CORPORATION
COMMISSION
TYLER BUILDING
1300 E MAIN STREET
RICHMOND VA 23219

Case No. 770CL16001171-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, May 15, 2017

Clerk of Court: BRENDA S. HAMILTON

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:    CHING, CARROL M
540-345-9543

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

**CHRISTOPHER AND**
**SUSAN SHELDON,**

and

**ROBERT AND**
**SANDRA SHELDON,**

**Plaintiffs,**

v.

**NICHOLS TRANSPORT COMPANY, INC.,**

**DAVID HOWARD BENNETT,**

and

**CHEMSOLV, INC.,**

**Defendants.**

Case No. CC 16-1171
**JURY TRIAL DEMANDED**

CIRCUIT COURT
Received & Filed
2:35pm
JUN 0 9 2016
By Janet H. Collier
Deputy Clerk
CITY OF ROANOKE

## COMPLAINT

COME NOW the Plaintiffs, Christopher and Susan Sheldon, and Robert and Sandra

Sheldon, through counsel, and as for their Complaint against Defendants Nichols Transport

Company, Inc., David Howard Bennett, and Chemsolv, Inc., state as follows:

## INTRODUCTION

1. This is an action under state law for negligence and negligence per se, gross

negligence, willful and wanton negligence, private nuisance, and trespass on the part of

Defendants which resulted in serious damage to the real and personal property of Plaintiffs, as

well as loss of the use and enjoyment of property, annoyance, inconvenience, emotional distress,

physical injury, and financial damages. Plaintiffs seek compensatory and punitive damages, attorney's fees, pre and post-judgment interest and costs.

## **PARTIES**

2. Plaintiffs Christopher and Susan Sheldon reside in the County of Roanoke on Virginia Tax Parcels 090.00-03-36.00-0000 and 0.90.00-03-37.00.0000, which are located in a rural area on Carr Rouse Road and are bordered on one side by Virginia State Route 116, also known in that area as Jae Valley Road.

3. Plaintiffs Robert and Sandra Sheldon are residents of New Hampshire and own the property in the County of Roanoke, Virginia Tax Parcels 090.00-03-36.0000 and 0.90.00-03-37.00.0000, located along Route 116 and Carr Rouse Road.

4. Defendant Nichols Transport Company, Inc., ("Nichols Transport") is a South Carolina corporation, headquartered at 3797 US-76, Mullins, South Carolina, 29574 and which also does business in the Commonwealth of Virginia. Nichols Transport is an entity engaged in the business of, among other things, transporting hazardous chemicals, including formaldehyde. Nichols Transport is the owner of the tractor trailer driven by David Howard Bennett in the course and scope of his employment which overturned and spilled over 4,000 gallons of a mixture containing formaldehyde, water and methanol, which caused significant damages to the Plaintiffs and the Plaintiffs' property.

5. Defendant David Howard Bennett ("Bennett"), at all relevant times, was the driver of the tractor trailer which overturned and spilled over 4,000 gallons of a mixture containing formaldehyde, water and methanol onto the Plaintiffs' property. At all relevant times, Bennett was an employee and/or agent of Nichols Transport and acting in the course and scope of his employment.

2

6. Defendant Chemsolv, Inc. ("Chemsolv") is a Virginia corporation, with its principal place of business located in the City of Roanoke at 1140 Industry Ave., SE, Roanoke, VA 24013. Chemsolv is engaged in the business of chemical distribution and was the owner and intended recipient of the formaldehyde mixture which spilled onto the Plaintiffs' property.

## VENUE

7. Venue is appropriate in the City of Roanoke pursuant to Virginia Code §§ 8.01-262(1), (3) and (4) as Defendant Chemsolv has its principal place of business and conducts substantial business activity in the City of Roanoke and wrongful acts and omissions occurred in the City of Roanoke.

## FACTS

8. On June 11, 2014, David Howard Bennett, an employee and/or agent of Nichols Transport acting in the course and scope of his employment as a truck driver for Nichols Transport, was driving a tractor trailer owned by Nichols Transport from a destination in North Carolina to the Chemsolv facility located in Roanoke, Virginia. Upon information and belief, Bennett and/or other Nichols Transport tractor trailers had made numerous previous deliveries of formaldehyde and/or other hazardous substances to Chemsolv, and both Nichols Transport and Chemsolv were involved in the route selection for these deliveries, including this delivery on June 11, 2014.

9. The tractor trailer was filled with several thousand gallons of a liquid substance composed of a mixture of water, methanol, and formaldehyde, a hazardous substance and known human carcinogen. Chemsolv was the intended recipient and owner of this formaldehyde mixture.

3

10. Bennett, at the direction of Nichols Transport and Chemsolv, traveled north from North Carolina along Route 122 towards Virginia Route 116, which is named Jubal Early Highway until it intersects with Virginia Route 681 at Windy Gap. At that point, Route 116 goes by the name Jae Valley Road. Prior to the intersection of Route 116 and Route 122, there was a conspicuous highway sign stating that tractor trailers such as the one driven by Bennett are prohibited on Route 116. Specifically, the highway sign stated as follows: "TRUCKS & COMBINATION VEHICLES OVER 28 FEET PROHIBITED ON RTE 116 FROM RTE 122 TO RTE 809." Route 116 is a rural highway which travels through a mountainous region with many tight curves for vehicles to negotiate, particularly in the Windy Gap area where the Sheldon property is located.

11. Despite this prohibition, Bennett, an experienced commercial driver, proceeded to drive his tractor trailer, filled with the formaldehyde mixture, a known hazardous substance, on Route 116. Upon information and belief, this route was selected by and/or known to Bennett, Nichols Transport and Chemsolv. Upon information and belief, both Nichols Transport and Chemsolv were aware that tractor trailers such as the tractor trailer driven by Bennett were specifically prohibited on Route 116, but nevertheless selected, authorized, and/or knew that Bennett was proceeding on this route because it shortened the travel distance and time to the Chemsolv facility in Roanoke.

12. After Bennett started driving along Route 116, he passed two additional conspicuous signs specifically stating that tractor trailers such as the one he was driving that day were prohibited on Route 116 in that area. Nevertheless, Bennett continued to drive his vehicle on this prohibited highway, in direct contravention of these warnings. He neither turned around nor contacted law enforcement to indicate that he was unable to turn around and request assistance.

4

Instead, Bennett, an experienced professional driver with a commercial driver's license, recklessly continued along Route 116, carrying a hazardous substance on a road which he knew was unsafe for tractor trailers.

13. Christopher and Susan Sheldon reside upon a small farm and homestead located on Carr Rouse Road, which abuts Jae Valley Road, or Route 116, in the County of Roanoke. The property is owned by Robert and Sandra Sheldon, and Christopher ("Chris") and Susan Sheldon have resided on the property for several years, working toward developing a sustainable homestead and an organic farm. The farm included a well, organic vegetable and herb garden, goats, chickens, turkeys, fruit trees and bushes, several outbuildings, and Chris and Susan Sheldon's home. By June of 2014, Chris and Susan had built the farm to a point where it provided enough produce, milk and meat to completely sustain their family for the year. Chris and Susan were also developing the property with the intention of making it a certified organic farm, and they had begun making organic soaps and were selling eggs locally. They intended to significantly expand these activities in the near future, to include organic produce and other organic products, which would be sold at farmers' markets and other local venues.

14. The Sheldon property is dependent on well water and a septic system because it is located in a rural area which is not served by public water and sewer utilities.

15. As Bennett drove along Route 116 on June 11, 2014, after having passed three separate signs specifically stating that tractor trailers such as the one he was operating were prohibited, he encountered a curve in the road adjacent to the Sheldon property, which is located between Route 116 and Carr Rouse Road. Bennett was unable to negotiate this curve and lost control of his tractor trailer. The tractor trailer crashed through a guard rail and overturned on the Sheldon property. The tank of the tractor trailer was breached, and a significant amount of

5

the formaldehyde mixture leaked onto the Sheldon property and farm. Ultimately, over 4,000 gallons of the formaldehyde mixture were released into the soil on the property.

16. The formaldehyde spill initially contaminated the soil of the property occupied and/or owned by the Sheldons. Chris and Susan Sheldon, as well as other residents of nearby properties, were evacuated from the area immediately after the spill while state officials attempted to control the leaking from the tractor trailer and evaluate the potential impact from the spill of this hazardous chemical mixture, including a potential explosion hazard. The Sheldons had to quickly move their 14 goats to a different location on the property as a result of the spill and build additional fencing to accommodate the animals.

17. Soil samples in the area of the spill on the Sheldon property showed that significant levels of formaldehyde were present. Thus, containment activities began at the site. A sump lined with plastic was installed on the Sheldon property as a containment structure down the slope from the area of the spill, near the area of the Sheldon livestock and garden.

18. Even after Chris and Susan Sheldon were able to return to their home, state officials were concerned about possible impacts from the spill upon well water in the area of the spill and required bottled water to be provided to the Sheldons and other local residents. In fact, due to the close proximity of their property and well to the spill, Chris and Susan continued to receive bottled water long after this had been discontinued for other residents in the area. The Sheldons were not able to use their well water for any purpose during this time, including for drinking, cooking or bathing. Instead, in order to bathe, cook and do laundry, Chris and Susan had to travel to the house of friends on a frequent basis during this period after the spill, at a significant distance from their home.

6

19. A few days after the spill on their property, Chris and Susan Sheldon installed a new corral area and gate to better house their goats. Chris Sheldon had to miss several days from work to relocate the animals and build the new fencing. In addition, the male goats had previously been kept in a separate pen, but at this point, they had to be kept in the same area with the females and baby goats due to limited space. The Sheldons also had to find separate housing for their two outdoor dogs and keep their cats indoors at all times because they had no assurance about the safety of the outdoor air and soil.

20. Although Chris and Susan continued to milk their female goats to keep up their milk production, they had to discard this milk as they could not determine whether it contained formaldehyde from the spill or if it was otherwise safe for human consumption. Before the spill, Chris and Susan had been getting between 5 and 6 gallons of milk per day from their herd and used this milk regularly for drinking as well as for making organic cheese, yogurt, kefir, and butter. Chris and Susan were also concerned that the eggs produced by their chickens were unsafe for human consumption due to the contamination of the soil on their property from the hazardous formaldehyde mixture. Therefore, these eggs, which before the spill averaged one and a half dozen per day, also had to be discarded. Nor could Chris and Susan Sheldon know whether their meat animals were safe to be butchered and consumed after the spill. Thus, these animals, approximately 40 meat chickens, 4 turkeys, and 3 goats, were destroyed.

21. Due to the contamination of the soil on the property, and the uncertainty of contamination of the water, Chris and Susan Sheldon also lost their entire garden of fresh produce, which they had invested substantial time in planting prior to the spill. Therefore, Chris and Susan had to purchase equivalent organic items from the grocery store, rather than consuming their own homegrown herbs and produce.

7

22.  In the month after the spill, officials from the Virginia Department of Environmental Quality informed Chris and Susan Sheldon that they were not certain what effect the formaldehyde mixture would have on the soil and water on their property.  These officials also told Chris and Susan that it was important to remove the contamination from their property before significant rains occurred, because the rain might cause the contamination to travel through the property.  Nevertheless, nothing was done to remove the contaminated soil, which created significant anxiety for the Sheldons once several summer rain storms did develop in the aftermath of the spill.

23.  In fact, the constant stress and uncertainty about their family's safety and health, as well as the health and safety of their livestock, caused significant emotional distress for Chris and Susan.  Susan Sheldon developed an inflamed rash over many parts of her body.  The Sheldons' young children also experienced a significant disruption to their education as Susan Sheldon homeschools her two daughters.  During the months following the spill, Chris and Susan Sheldon had to travel frequently to other locations to cook, bathe and do laundry, which significantly disrupted their daily school routines.

24.  Trucks and heavy equipment were frequently on the property after the spill, as part of the assessment and remediation efforts to contain and clean up the spill.  In fact, one of Chris and Susan's young daughters developed a fear of trucks in the months following the spill as she connected these vehicles with the disruption to her family's life and farm.  These vehicles created significant noise as well as damage to vegetation on the property.

25.  The original plan for remediation was to remove the contaminated soil from the property altogether.  However, this plan was changed by August of 2014 to the installation of an aeration system to attempt to reduce the level of formaldehyde in the soil.  In order to

8

accommodate the remediation efforts, the Sheldons' goats had to be permanently relocated to another area of the property, which required the construction of a new barn and the placement of new fencing. There were significant delays in the construction of the barn, however, as specifications were not met and had to be fixed later. In addition, a goat died when it became trapped between different parts of the new barn. Furthermore, the area to which the goats were moved did not have sufficient pasture as it had only recently been seeded, as the Sheldons had not planned to use this area for pasture prior to the spill. Thus, Chris and Susan had to purchase additional hay to feed their animals during the following months.

26. After a series of additional delays, the soil aeration system was finally started up in early October 2014, over three months following the spill in June. Chris and Susan Sheldon did not believe it would be safe for their family to reside on the farm during the soil aeration process, so they had to move to another location during this time. Chris and Susan had been told the soil aeration process should take only about two weeks, but it ended up lasting for two months. Furthermore, air testing on the property showed that formaldehyde was, in fact, released into the air on the property during the soil aeration process. During this time, Chris or Susan Sheldon had to travel back to the farm frequently to care for their animals remaining on the property.

27. After the soil aeration system operated for approximately two months, it was shut down, and Nichols Transport ended their remediation activities at that time. However, the contamination from the spill had killed many of the trees in the area of the spill at the top of the slope near Route 116 on the Sheldons' property. Approximately 14 of these dead trees were cut approximately 10 feet from the ground, with the stumps left in place, ostensibly to leave some barrier between the property and the road. However, these decomposing tree stumps, as opposed to live trees, are not as stable in preventing erosion and will not act as an effective barrier in the

9

event of another accident in the future on this sharp curve in the road in the Windy Gap area. In addition, the trees killed as a result of the spill of formaldehyde had previously provided seclusion for the Sheldons' rural property. Now, the property is much more visible from the road, and noise from the road is more apparent, which has reduced the Sheldons' enjoyment of their property.

28. After the accident, defendant David Howard Bennett pled guilty in the General District Court for the County of Roanoke on August 27, 2014 for failing to obey a highway sign, in violation of Virginia Code § 46.2-830, and losing control of his vehicle, in violation of Virginia Code § 46.2-853, as a result of his impermissibly traveling on Route 116 and losing control of the tractor trailer containing the formaldehyde mixture. The officer testified before the court that the Sheldons' organic farm had been destroyed by the wreck.

29. During the initial period of remediation, Chris and Susan Sheldon had been told that there was no danger that their well water could be contaminated by the formaldehyde released onto their property as a result of the spill. Testing of the water coming from their well showed no detectable levels of formaldehyde through approximately March 2015, when this testing was halted.

30. During the late summer of 2015, however, Chris and Susan began noticing that their water had developed an oily sheen and a foul smell. Ultimately, Chris and Susan contacted the Virginia Department of Environmental Quality to test their water once again. A water sample was taken in the fall which showed a significant level of formaldehyde, demonstrating that the formaldehyde from the spill in June 2014 had made its way into the ground water on the Sheldons' property. Several samples were taken in November of 2015 to confirm these results, all of which showed significantly elevated levels of formaldehyde, which had previously been

non-detectable. Testing also showed that the well water was contaminated with iron related bacteria.

31. The Sheldons immediately stopped consuming and using the well water, and bottled water was provided for their use. Once again, the Sheldons were faced with another lengthy assessment and remediation process on their property. A water tank was put in place for their residence which was hooked up to the home to provide an alternate source of water. This water tank had to be refilled on a periodic basis with municipally sourced water, although the tank occasionally ran out in the midst of the family's use of the water, such as during a shower, before it was refilled. Susan Sheldon's skin rash also began to flare up again due to the presence of chlorine in the municipal water provided. In addition, Chris and Susan were not able to plant a garden in the spring of 2016 as they had planned because they could not be certain that their produce would be uncontaminated by formaldehyde from the groundwater, further disrupting their homestead and farming activities.

32. The Sheldons were then informed by officials from the Virginia Department of Environmental Quality, as well as representatives of Nichols Transport, that nothing would be done to remove the formaldehyde from the groundwater on their property. Instead, the plan is to dig a new well on the property in a different location from the existing well. However, this new well would require the installation of piping over a significant portion of their property to reach their home, requiring the removal of trees and other vegetation on their farm. In addition, because the formaldehyde will remain in the groundwater for an unknown length of time, testing of the water from the new well would need to take place on a frequent basis over possibly several years to find out if the new well becomes likewise contaminated by formaldehyde. If such testing did determine the presence of formaldehyde, a known carcinogen, in the water from a

11

new well, the Sheldons would have been using that contaminated well water for bathing, drinking, and cooking for some period of time before such test results could become known.

33. In addition, the air in the Sheldon residence on the property contains elevated levels of formaldehyde as a result of the formaldehyde from the spill in the subsurface soil and groundwater. The formaldehyde in the soil, water and air on the Sheldon property has caused and will continue to cause danger to the Sheldons' health and lives.

34. The spill of the formaldehyde mixture upon the Sheldon farm in June of 2014 has completely disrupted their property and their lives and the attempts to remediate the contamination from this hazardous, known carcinogen remain ongoing to the present time. In fact, at present, despite the remediation efforts to date, the property has not been restored to the same condition it was in prior to the formaldehyde spill. It is unlikely that the Sheldons will be able to develop the property as an organic farm for many years, since the property has been exposed to formaldehyde, a hazardous substance and known carcinogen.

35. Upon information and belief, Nichols Transport frequently delivered formaldehyde and other hazardous materials to Chemsolv, and both Nichols Transport and Chemsolv authorized, knew, and/or should have known that drivers, including Bennett, had taken and planned to take this route involving Route 116 in Roanoke County. Nichols Transport, Bennett, and Chemsolv also knew that tractor trailers were prohibited on this route and that this route was dangerous and unsafe for tractor trailers, such as the tractor trailer containing the formaldehyde mixture on June 11, 2014 and driven by Bennett. Nevertheless, Nichols Transport and Chemsolv did not instruct Bennett to use another route and/or instructed or authorized Bennett to use this route to the Chemsolv facility, in reckless, willful, and/or conscious disregard of the rights of the Plaintiffs.

12

36. Defendants' actions have diminished the value of Plaintiffs' property, continuously interfered with the enjoyment of that property, and caused a material disturbance and annoyance to Plaintiffs in the use, ownership and/or occupation of the property. Defendants' actions endangered the life and/or health of Plaintiffs and obstructed their reasonable and comfortable use of the property.

37. As a direct and proximate result of Defendants' actions, Plaintiffs have been deprived of the quiet, comfortable use of their home and property. In addition, the crash of the tractor trailer and subsequent spill of the formaldehyde mixture upon Plaintiffs' property has significantly interfered with Plaintiffs' right of possession and enjoyment of the property they owned and/or occupied. Plaintiffs have suffered, and will continue to suffer injury and damages to their real property, additional expenses related to the assessment and remediation process on the property, loss of livestock and crops, loss of income, loss of means of producing income, and personal injuries, including, but not limited to, emotional distress, physical injury, inconvenience, anguish, loss of enjoyment of life, financial damages, and other damages.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE PER SE

38. The preceding paragraphs of this Complaint are incorporated by reference herein.

39. Defendants Nichols Transport, Bennett and Chemsolv were under statutory duties to use reasonable care and operate the vehicle driven by Bennett, in the course and scope of his employment with Nichols Transport, and while transporting the chemicals owned by Chemsolv on the route chosen, authorized, and/or known to all Defendants, in a safe manner upon the public highways of the Commonwealth of Virginia. Defendant Nichols Transport is also

responsible for the actions of those who drive its motor vehicles, and Bennett's unlawful actions can be attributed to Nichols Transport on the basis of respondeat superior.

40. The statutes requiring the use of reasonable care and the operation of a vehicle, such as the tractor trailer driven by Bennett on June 11, 2014, were enacted for the public safety in that their purpose is to ensure the safety of persons and property on and along the public highways of the Commonwealth of Virginia. Furthermore, the Sheldons, as the owners and occupiers of property along these public highways, belonged to the class of persons for whose benefit these statutes were enacted.

41. The harm that occurred in this case, a serious motor vehicle accident causing the release of over 4,000 gallons of the formaldehyde mixture, was of the type which these statutes were designed to protect from in that the spill occurred as a result of the failure to obey multiple highway signs, in direct violation of Virginia Code § 46.2-830, and the loss of control of the vehicle driven by Bennett, in direct violation of Virginia Code § 46.2-853, as previously set forth. In fact, Bennett pled guilty to both of these violations of the applicable law.

42. As a direct and proximate result of Defendants Nichols Transport's, Bennett's, and Chemsolv's breaches of their statutory duties, the Plaintiffs and their property were injured, and they have suffered, and will continue to suffer, injury and damages to their real property, additional expenses related to the assessment and remediation process on the property, loss of livestock and crops, loss of income, loss of means of producing income, and personal injuries, including, but not limited to, emotional distress, physical injury, inconvenience, anguish, loss of enjoyment of life, financial damages, and other damages.

43. The acts of the Defendants as set forth above were wanton, malicious, oppressive, shocking, outrageous, willful, intolerable, demonstrate a conscious disregard for the safety of

14

others, and offend general standards of decency and, as such, entitle Plaintiffs to an award of punitive damages as to all Defendants, jointly and severally.

## COUNT II – NEGLIGENCE

44. The preceding paragraphs of this Complaint are incorporated by reference herein.

45. Defendant Bennett owed a duty to the Plaintiffs and the public upon and along the public highways of the Commonwealth of Virginia a duty to use reasonable care and to operate his vehicle in a safe manner. Defendant Nichols Transport had a duty to the Plaintiffs and the public upon and along the public highways of the Commonwealth of Virginia to ensure that its employees and/or agents, including Bennett, used reasonable care in operating motor vehicles on its behalf and that such employees operated such motor vehicles in a safe manner. Defendant Chemsolv had a duty to the Plaintiffs and the public upon and along the public highways of the Commonwealth of Virginia to ensure that entities and drivers transporting hazardous chemicals on its behalf and/or to its facility used reasonable care in operating the motor vehicles transporting such chemicals and operated such motor vehicles in a safe manner, including selecting safe routes for the transportation of such chemicals.

46. Defendant Bennett breached his duty to the Plaintiffs to use reasonable care in the operation of his vehicle. Defendant Nichols Transport breached its duty to ensure that its employees and/or agents used reasonable care in operating motor vehicles on its behalf in a safe manner. Defendant Chemsolv breached its duty to ensure that entities and drivers transporting hazardous chemicals on its behalf and/or to its facility used reasonable care in operating the motor vehicles transporting such chemicals and operated such motor vehicles in a safe manner, including selecting safe routes for the transportation of such chemicals.

15

47. Defendant Bennett breach his duty to the Plaintiffs and was negligent and/or reckless in that he failed to obey several highway signs indicating that tractor trailers such as the one he was driving were prohibited on Route 116, failed to stop and contact law enforcement authorities for direction, proceeded to drive upon a route which was dangerous for tractor trailers while transporting hazardous chemicals, failed to keep his vehicle under proper control, and operated his vehicle in a careless, reckless and negligent manner.

48. Defendant Nichols Transport and Chemsolv breached their duties to the Plaintiffs and were negligent and/or reckless in that they knew that tractor trailers were prohibited upon the relevant section of Route 116 but nevertheless selected, authorized, and/or knew that Bennett was proceeding upon that route at the time of the formaldehyde spill.

49. The careless, reckless, and negligent actions of Bennett, Nichols Transport, and Chemsolv proximately caused the injuries to the Plaintiffs and their property.

50. Defendant Bennett was acting within the scope of his employment for Defendant Nichols Transport at the time he proximately caused the injuries to the Plaintiffs and their property, and therefore, Nichols Transport is also liable for Bennett's careless, reckless, and negligent actions on the basis of respondeat superior.

51. As a direct and proximate result of the Defendants' careless, reckless, and negligent actions, the Plaintiffs and their property were injured, and they have suffered, and will continue to suffer, injury and damages to their real property, additional expenses related to the assessment and remediation process on the property, loss of livestock and crops, loss of income, loss of means of producing income, and personal injuries, including, but not limited to, emotional distress, physical injury, inconvenience, anguish, loss of enjoyment of life, financial damages, and other damages.

52. The acts of the Defendants as set forth above were wanton, malicious, oppressive, shocking, outrageous, willful, intolerable, demonstrate a conscious disregard for the safety of others, and offend general standards of decency and, as such, entitle Plaintiffs to an award of punitive damages as to all Defendants, jointly and severally.

## COUNT III – GROSS NEGLIGENCE

53. The preceding paragraphs of this Complaint are incorporated by reference herein.

54. The actions of the Defendants as previously set forth in this Complaint, including but not limited to, failing to obey several highway signs indicating that tractor trailers such as the one driven by Bennett were prohibited on Route 116, failing to stop and contact law enforcement authorities for direction, proceeding to drive upon a route which was dangerous for tractor trailers while transporting hazardous chemicals, failing to keep the tractor trailer under proper control, operating the tractor trailer in a careless, reckless and negligent manner, knowing that tractor trailers were prohibited upon the relevant section of Route 116 but nevertheless selecting, authorizing, and/or knowing that Bennett was proceeding upon this route at the time of the formaldehyde spill, demonstrate such recklessness and indifference to others on the part of all Defendants as constitutes an utter disregard of caution and a conscious disregard and neglect for the safety of others and their property.

55. As a direct and proximate result of these grossly negligent breaches of duties by the Defendants and/or their agents and/or employees, the Plaintiffs and their property were injured, and they have suffered, and will continue to suffer, injury and damages to their real property, additional expenses related to the assessment and remediation process on the property, loss of livestock and crops, loss of income, loss of means of producing income, and personal injuries,

including, but not limited to, emotional distress, physical injury, inconvenience, anguish, loss of enjoyment of life, financial damages, and other damages.

## COUNT IV – WILLFUL AND WANTON NEGLIGENCE

56. The preceding paragraphs of this Complaint are incorporated by reference herein.

57. The actions of the Defendants as previously set forth in this Complaint, including but not limited to, failing to obey several highway signs indicating that tractor trailers such as the one driven by Bennett were prohibited on Route 116, failing to stop and contact law enforcement authorities for direction, proceeding to drive upon a route which was dangerous for tractor trailers while transporting hazardous chemicals, failing to keep the tractor trailer under proper control, operating the tractor trailer in a careless, reckless and negligent manner, knowing that tractor trailers were prohibited upon the relevant section of Route 116 but nevertheless selecting, authorizing, and/or knowing that Bennett was proceeding upon this route at the time of the formaldehyde spill, demonstrate such recklessly indifferent actions which were taken consciously in disregard of the rights of another person or persons, in this case the Plaintiffs, when these Defendants knew that their conduct would probably result in injury to another as a result of the travel by the tractor trailer carrying hazardous chemicals and driven by Bennett upon a public highway which was explicitly prohibited to such tractor trailers due to the danger to persons and property.

58. As a direct and proximate result of these willfully and wantonly negligent breaches of duties by the Defendants and/or their agents and/or employees, the Plaintiffs and their property were injured, and they have suffered, and will continue to suffer, injury and damages to their real property, additional expenses related to the assessment and remediation process on the property, loss of livestock and crops, loss of income, loss of means of producing income, and

personal injuries, including, but not limited to, emotional distress, physical injury, inconvenience, anguish, loss of enjoyment of life, financial damages, and other damages.

## COUNT V - PRIVATE NUISANCE

59. The preceding paragraphs of this Complaint are incorporated by reference herein.

60. The Defendants negligently caused formaldehyde, a hazardous substance and known carcinogen, to enter the property, including the soil, air, and ground water, occupied and/or owned by the Plaintiffs. The entry of this formaldehyde mixture onto the Plaintiffs' property has injuriously affected the Plaintiffs by diminishing the value of the property occupied and/or owned by the Plaintiffs.

61. The spill and release of formaldehyde onto the Plaintiffs' property as a result of the Defendants' actions has endangered the lives of Chris and Susan Sheldon, as well as their family, and has unreasonably interfered, and continues to interfere, with the Plaintiffs' use and enjoyment of their property. Such interference and annoyance includes, but is not limited to, contamination of the soil, air, well, and ground water on the property, destruction of organic crops and plants, harm to livestock, destruction of trees and other vegetation, continuing remediation activities on the property involving noise and the use of large equipment on the property, and material and ongoing disturbance in the Plaintiffs' use and/or occupation of the property. Plaintiffs have been deprived of the quiet, comfortable enjoyment of their rural home and property and have lost income, and means of producing income, as a result of the damage to their organic farm.

62. The presence of formaldehyde in the soil and ground water constitutes an ongoing and potentially permanent nuisance. The interference to the Plaintiffs' property as a result of the

contamination from the spilled formaldehyde is substantial and ongoing, and remediation efforts continue on the property to the present time and likely for years to come.

63. Plaintiffs have been damaged as a direct and proximate result of the Defendants' actions involving the spill of formaldehyde and resulting release of these hazardous chemicals onto the Plaintiffs' property. Plaintiffs Chris and Susan Sheldon have been exposed to formaldehyde, a known human carcinogen, in the soil, air, and water on the property. Plaintiffs Chris and Susan Sheldon have been driven from their home and forced to reside in temporary housing. Plaintiffs Chris and Susan Sheldon have suffered and continue to suffer damages to their well, groundwater, organic crops and trees, and livestock, as well as loss of enjoyment and quality of life, loss of income, and loss of means of producing income. Plaintiffs Robert and Sandra Sheldon have suffered damages to their real property. The Defendants' actions have endangered the life and health of the Plaintiffs and obstructed the reasonable and comfortable use of the property. They have suffered diminution in property value, as well as physical injury, emotional distress, sleeplessness, nausea, headaches, inconvenience, and loss of enjoyment of life and property.

64. The acts of the Defendants as set forth above were wanton, malicious, oppressive, shocking, outrageous, willful, intolerable, and offend general standards of decency and, as such, entitle Plaintiffs to an award of punitive damages as to all Defendants, jointly and severally.

## COUNT VI - TRESPASS

65. The preceding paragraphs of the Complaint are incorporated by reference herein.

66. Plaintiffs Robert and Sandra Sheldon are the owners of the real property upon which the Defendants released formaldehyde, a hazardous substance and known carcinogen. Plaintiffs

Chris and Susan Sheldon occupied and had a right of possession of that real property upon which the Defendants released formaldehyde, a hazardous substance and known carcinogen.

67. The release and entry of formaldehyde onto the real property, including into the soil, air and ground water, owned or occupied by Robert and Sandra Sheldon and/or Chris and Susan Sheldon was without right or invitation and was not authorized by the Sheldons.

68. The unauthorized release and entry of formaldehyde onto the Sheldons' real property caused damage to such real property and substantially interfered with their possession and enjoyment of the real property. The unauthorized release and entry of formaldehyde and resulting damage to the Sheldons' real property was caused by the Defendants. The Defendants acted without authority to release the formaldehyde and in direct interference with the Plaintiffs' interest in and possession of the property.

69. Furthermore, this unauthorized release and entry of formaldehyde on the Sheldons' property was committed willfully as a result of Defendants' misconduct, negligence, gross negligence and bad faith and in reckless disregard of the exclusive rights of the Plaintiffs in the ownership and possession of the property.

70. As a direct and proximate result of the actions of the Defendants, Robert and Sandra Sheldon and Chris and Susan Sheldon have suffered damages to their real property and have further suffered personal injuries and financial damages.

71. The acts of the Defendants as set forth above were wanton, malicious, oppressive, shocking, outrageous, willful, intolerable, and offend general standards of decency and, as such, entitle Plaintiffs to an award of punitive damages as to all Defendants, jointly and severally.

WHEREFORE, Plaintiffs request damages as follows:

A. For Count I:

For each Plaintiff, against the Defendants, jointly and severally, damages in the amount of one million dollars ($1,000,000.00), and punitive damages in the amount of one million dollars ($1,000,000.00);

B. For Count II:

For each Plaintiff, against the Defendants, jointly and severally, damages in the amount of one million dollars ($1,000,000.00), and punitive damages in the amount of one million dollars ($1,000,000.00);

C. For Count III:

For each Plaintiff, against the Defendants, jointly and severally, damages in the amount of one million dollars ($1,000,000.00), and punitive damages in the amount of one million dollars ($1,000,000.00);

D. For Count IV:

For each Plaintiff, against the Defendants, jointly and severally, damages in the amount of one million dollars ($1,000,000.00), and punitive damages in the amount of one million dollars ($1,000,000.00);

E. For Count V:

For each Plaintiff, against the Defendants, jointly and severally, damages in the amount of one million dollars ($1,000,000.00), and punitive damages in the amount of one million dollars ($1,000,000.00);

F. For Count VI:

For each Plaintiff, against the Defendants, jointly and severally, damages in the amount of one million dollars ($1,000,000.00), and punitive damages in the amount of one million dollars ($1,000,000.00);

G. For attorneys' fees, pre and post-judgment interest, and costs; and

H. For such further relief as this Court deems just and proper.

TRIAL BY JURY DEMANDED.

Respectfully submitted,

CHRISTOPHER AND SUSAN SHELDON
ROBERT AND SANDRA SHELDON

By: _____
                    Counsel

John E. Lichtenstein (VSB No. 27048)
Carrol M. Ching (VSB No. 68031)
Monica L. Mroz (VSB No. 65766)
Lichtenstein Law Group PLC
101 South Jefferson St., Suite 400
Roanoke, Virginia 24011
(540) 345-5890 (Telephone)
(540) 345-5789 (Facsimile)

23

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. _____
(CLERK'S OFFICE USE ONLY)

Roanoke City
................................................................ Circuit Court

Christopher and Susan Sheldon                    v./In re: Nichols Transport Company, Inc., David Howard Bennett,
PLAINTIFF(S)                                                          DEFENDANT(S)
Robert and Sandra Sheldon                                  and Chemsolv, Inc.

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[x] Other General Tort Liability

## ADMINISTRATIVE LAW
[ ] Appeal/Judicial Review of Decision of (select one)
    [ ] ABC Board
    [ ] Board of Zoning
    [ ] Compensation Board
    [ ] DMV License Suspension
    [ ] Employee Grievance Decision
    [ ] Employment Commission
    [ ] Local Government
    [ ] Marine Resources Commission
    [ ] School Board
    [ ] Voter Registration
    [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

## WRITS
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

## MISCELLANEOUS
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of U.S. Currency
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[x] Damages in the amount of $ 1,000,000.00 _plus_ _____ are claimed.

June 9, 2016
DATE

[ ] PLAINTIFF [ ] DEFENDANT [x] ATTORNEY FOR [•] PLAINTIFF [ ] DEFENDANT

Monica Mroz, Esq., Lichtenstein Law Group PLC
PRINT NAME

P.O. Box 601, Roanoke VA 24004-0601 / 540-343-9711
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

Monica.Mroz@lichtensteinlawgroup.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 10/14



OFFICIAL RECEIPT
CITY OF ROANOKE CIRCUIT COURT
315 CHURCH AVE SW
ROANOKE, VA 24016
540-853-6702

CIVIL

```
DATE: 06/09/16 TIME: 14:35:47 ACCOUNT: 770CL16001171-00   RECEIPT: 16000013335
CASHIER: JRC   REG: UC10  FILING: GTOR  TYPE: FULL PAYMENT
CASE COMMENTS: SHELDON, CHRISTOPHER    V. NICHOLS TRANSPORT COMPA
   SUIT AMOUNT:   $1,000,000.00
ACCT OF: SHELDON, CHRISTOPHER           RECD: LICHTENSTEIN LAW GROUP PLC
   CHECK:      $351.00   10316
DESCRIPTION 1:  PLAINTIFF: SHELDON, CHRISTOPHER
           2: NO HEARING SCHEDULED
CODE DESCRIPTION            PAID   CODE DESCRIPTION              PAID
304  CLERK CIVIL FEE      290.00   049  WRIT TAX - CIVIL        25.00
106  TECHNOLOGY TRST FND    5.00   123  LEGAL AID FEE            9.00
147  INDIGENT ASSISTANCE    1.00   170  COURT TECH FUND         10.00
219  LAW LIBRARY            4.00   229  CHMF                     2.00
228  CHCF                    .00   426  E-FILING FEES            5.00

                              TENDERED   :       351.00
                              AMOUNT PAID:       351.00
                              CHANGE AMT :          .00
```

CLERK OF COURT: BRENDA S. HAMILTON

PAYOR'S COPY
RECEIPT COPY  1  OF  2

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF ROANOKE

CHRISTOPHER AND SUSAN SHELDON, et al. :

      Plaintiffs,

      v.

NICHOLS TRANSCPORT COMPANY, INC.,
*et al.*,

      Defendants.

:
:
:
:
:    Case No.: CL16-1171
:
:
:
:
:

---

### DEFENDANT CHEMSOLV, INC.'S PLEA IN BAR
### TO PLAINTIFFS' COMPLAINT

COMES NOW Defendant CHEMSOLV, INC. (hereinafter, "Defendant"), by and through counsel, BONNER KIERNAN TREBACH & CROCIATA, LLP, and hereby respectfully submits its Plea in Bar to Plaintiffs' Complaint (hereinafter, "Plaintiff") in the above-captioned action, as follows:

1. For Plaintiffs' claims against Defendant, which appear to be based solely on the theory of agency, respondeat superior and/or vicarious liability, there is no evidence to support any such claim.

2. Defendant's only involvement in this matter it that it was intended recipient of the cargo being hauled by the other defendants at the time of the subject accident.

3. Neither Defendant Nichols nor Defendant Bennett was an employee of Defendant. At best, they were independent contractors. The fact that Defendant was the recipient of good being delivered by an independent contractor does not create a duty upon it.

4. Defendant did not, is not alleged, and there is no evidence to support, any such claim that Defendant exercised any authority, dominion and/or control over the others defendants.

5. Count I is inapplicable to Defendant because it was not operating any vehicles at the time of the subject accident. §46.2-830 and §46.2-853 of the Code of Virginia, as amended, contain traffic violations, which neither permit a private cause of action nor may they be used as a basis for a claim of negligence per se.

6. Plaintiffs' attempt to create a duty and violation thereof with regard to intended recipients of good or services, which is not recognized in Virginia.

7. There is no evidence to support a claim for Negligence (Count II), Gross Negligence (Count III), Willful and Wanton Negligence (Count IV), Private Nuisance (Count V), Trespass (Count VI) and/or punitive damages against Defendant.

8. Count IV, Willful and Wanton Negligence, is not a recognized cause of action in Virginia. It would be part and parcel of Plaintiffs' claims for gross negligence and punitive damages and, therefore, is duplicative.

9. The allegations against Defendant do not rise to the level to state a claim for punitive damages. Moreover, Plaintiffs' claim for punitive damages is beyond the statutory limit of $350,000 for punitive damages.

10. In accordance with the American Rule, Plaintiffs are not entitled to attorney's fees.

11. In Virginia, "a plea in bar asserts a single issue [of fact] which, if proven, creates a bar to a plaintiff's recovery." *Smith v. McLaughlin*, 289 Va. 241, 252 (2015).

WHEREFORE, Defendant Morton Salt, Inc. respectfully request that this Court empanel a jury pursuant to the Va. Code 8.01-336, and/or other applicable law, grant Defendant's Plea in Bar, dismiss Defendant from this case with prejudice and/or for such other relief as the court sees fit in granting.

Date: September 14, 2017.     Respectfully submitted,

**BONNER KIERNAN TREBACH & CROCIATA, LLP**

Craig L. Sarner, Esquire (Bar No. 37384)
Christopher E. Hassell, Esquire (Bar No. 30469)
1233 20th Street, N.W., Suite 800
Washington, D.C.  20036
Telephone:  (202) 712-7000
Facsimile:  (202) 712-7100
csarner@bonnerkiernan.com
chassell@bonnerkiernan.com
*Counsel for Defendant Chemsolv, Inc.*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent via first class mail, postage prepaid, this 14th day of September 2017 to:

John E. Lichenstein, Esquire
Carrol M. Ching, Esquire
Lichtenstein Law Group, PLC
101 South Jefferson St., Suite 400
Roanoke, VA 24011
*Counsel for Plaintiffs*

John L. Cooley, *Esquire*
CooleySublettPearson PLC
2965 Colonnade Drive, Suite 200
Roanoke, VA 20969
*Counsel for Defendant Nichols Transport Company, Inc.*

John K. Messersmith, IV, Esquire
Kalbaugh Pfund & Messersmith
901 Moorefield Park Drive
Richmond, VA 23236
*Counsel for Defendant David Howard Bennett*

_____ /s/ SCo 80479
Craig L. Sarner

VIRGINIA:

### IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

CHRISTOPHER AND )
SUSAN SHELDON, )
)
And )
)
ROBERT AND )
SANDRA SHELDON, )
)
    Plaintiffs, )
)
v. )
)
NICHOLS TRANSPORT COMPANY, INC., )
)
DAVID HOWARD BENNETT, )
And )
CHEMSOLV, INC., )
)
    Defendants. )

CIRCUIT COURT
Received & Filed
11:00AM
JUL 1 4 2017
By Natalie Tomlinson
Deputy Clerk
CITY OF ROANOKE

Case No.: CL 16-1171

## MOTION FOR ADMISSION *PRO HAC VICE* OF
## RICHARD S. BARON and BENJAMIN L. FRUCHEV

    Comes now, John L. Cooley, Esq., an attorney admitted to practice in this Court, and counsel of record for the Defendant, Nichols Transport Company, Inc., in this matter, and hereby moves the Court for the admission of Richard S. Baron, Esq. and Benjamin L. Fruchev, Esq. *pro hac vice,* to this Court as counsel for the Defendant Nichols Transport Company, Inc. for the purposes of litigating the above captioned case and in support thereof state as follows:

    1. The case in which I seek the admission of Richard S. Baron, Esq. and Benjamin L. Fruchev,, Esq. to appear *pro hac vice* is styled **Christopher and Susan Sheldon and Robert and Sandra Sheldon v. Nichols Transport Company, Inc., David Howard Bennett and Chemsolv, Inc.,** CL 16-1171, currently pending in this Court.

    2. The grounds for the motion are set forth in the respective applications of Mr. Baron

COOLEY SUDLETT PEARSON PLC
Roanoke, VA

and Mr. Fruchey, which are submitted herewith and attached hereto and marked as "Exhibit 1". The fee, payable to the Clerk of the Supreme Court of Virginia is attached to each respective application.

3. The address, telephone no, fax no. and email address of local counsel is:

John L. Cooley, Esq. (VSB #25962)
CooleySublettPearson PLC
2965 Colonnade Drive, Suite 200
PO Box 20869
Roanoke VA 24018
Telephone: 540-343-2451
Facsimile: 540-345-6417
Email: jlcooley@cooleysublett.com

4. Counsel for Defendant Nichols Transport Company, Inc. has consulted with counsel for Plaintiff and has been advised that counsel has no objection to the motion for admission *pro hac vice*.

5. A draft Order is attached hereto and incorporated herein by reference.

WHEREFORE, based upon the experience and credentials of Richard S. Baron, Esq. and Benjamin L. Fruchey, Esq., it is hereby requested that this Court grant this Motion for *Pro Hac Vice* Admission and admit Richard S. Baron, Esq. and Benjamin L. Fruchey, Esq., as Defendant's Nichols Transport Company, Inc. counsel in this matter in association with the undersigned and his firm.

NICHOLS TRANSPORT COMPANY, INC.

Of Counsel

COOLEYSUBLETTPEARSONPLC
Roanoke VA

John L. Cooley, Esq. (VSB #25962)
**CooleySublettPearson PLC**
2965 Colonnade Drive, Suite 200
PO Box 20869
Roanoke VA 24018
Telephone: 540-343-2451
Facsimile: 540-345-6417
Email: jlcooley@cooleysublett.com
**Counsel for Defendant**
**Nichols Transport Company, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was mailed this 14th day of July, 2017, to:

John E. Lichtenstein, Esq.
Carrol Ching, Esq.
Lichtenstein Law Group, PLC
101 South Jefferson Street, Suite 400
Roanoke, VA 24011
Telephone: 540-912-4429
John.Lichtenstein@lichtensteinlawgroup.com
Carrol.Ching@lichtensteinlawgroup.com
**Counsel for Plaintiff**

Of Counsel

\\Linus\Files\Barron\22475\Mot Admission Farina Pro Hac Vice Nichols Trans.Docx

# Exhibit 1

## APPLICATION TO APPEAR *PRO HAC VICE* BEFORE A VIRGINIA TRIBUNAL

I, __BENJAMIN__ __LEE__ __FRUCHEY__ _____, the
   APPLICANT FIRST NAME        MIDDLE NAME        LAST NAME        SUFFIX

undersigned attorney, hereby apply to this tribunal of the Commonwealth of Virginia,

__Roanoke City Circuit Court_____ , to appear as counsel

*pro hac vice* pursuant to Rule 1A:4 of the Rules of the Supreme Court of Virginia.

I further state the following:

1. The case in which I seek to appear *pro hac vice* is styled

   __Christopher and Susan Sheldon v Nichols Transport Company, Inc._____ , has

   docket number __CL16-1171__ and is pending in

   __Roanoke City Circuit Court_____ .

   This case

   ☐ is

   ☒ is not

   a related or consolidated matter for which I have previously applied to appear *pro hac vice*.

   ☐ I have previously applied to appear *pro hac vice* in the following related or

   consolidated matters:

   a. _____
       DOCKET NUMBER       COURT NAME

   _____
       DATE OF PRO HAC     STYLE OF RELATED OR CONSOLIDATED MATTER
       VICE APPLICATION

   b. _____
       DOCKET NUMBER       COURT NAME

   _____
       DATE OF PRO HAC     STYLE OF RELATED OR CONSOLIDATED MATTER
       VICE APPLICATION

   ☐ Additional Sheet attached.

2. __8621 Cass River Drive, Fowlerville, MI 48836_____
   APPLICANT'S RESIDENCE
   __38777 Six Mile Road, Suite 300, Livonia, MI 48152_____
   APPLICANT'S OFFICE ADDRESS

Michigan       P71945

Case 7:19-cv-00398-GEC   Document 1-1   Filed 05/28/19   Page 38 of 69   Pageid#: 46

3. John L. Cooley                  25962
NAME OF LOCAL COUNSEL            VSB NUMBER

2965 Colonnade Drive, Suite 200, Roanoke, VA 24018
STREET ADDRESS

(540) 345-6417    jlcooley@cooleysublett.com        (540) 343-2451
FAX NUMBER        EMAIL ADDRESS               TELEPHONE NUMBER

4. CHRISTOPHER and SUSAN SHELDON
NAME OF PARTY TO CASE

Carrol Ching, Lichtenstein Law Group, 101 S. Jefferson St, Ste. 400, Roanoke, VA 24011
NAME AND ADDRESS OF COUNSEL FOR PARTY

ROBERT and SANDRA SHELDON
NAME OF PARTY TO CASE

Carrol Ching, Lichtenstein Law Group, 101 S. Jefferson St, Ste. 400, Roanoke, VA 24011
NAME AND ADDRESS OF COUNSEL FOR PARTY

NICHOLS TRANSPORT COMPANY, INC.
NAME OF PARTY TO CASE

John Cooley, 2965 Colonnade Drive, Suite 200, Roanoke, VA 24018
NAME AND ADDRESS OF COUNSEL FOR PARTY

☒ Additional sheet attached.

5. Michigan                 11/12/08           71945
COURT TO WHICH APPLICANT IS ADMITTED    DATE OF ADMISSION      BAR #

U.S. District Court-Eastern District of Michigan    July 2013       N/A
COURT TO WHICH APPLICANT IS ADMITTED    DATE OF ADMISSION      BAR #

☐ Additional sheet attached.

6. I am a member in good standing and authorized to appear in the courts identified in

paragraph 5.

7. I am not currently disbarred or suspended in any state, territory, United States

possession or tribunal.

Case 7:19-cv-00398-GEC    Document 1-1    Filed 05/28/19    Page 39 of 69    Pageid#: 47

8. I ☒ am not subject to a pending disciplinary investigation or proceeding by

      ☐ am subject to a pending disciplinary investigation or proceeding by

any court, agency or organization authorized to discipline me as a lawyer. (If such an investigation or proceeding is pending, attach to this application and incorporate by reference a statement specifying the jurisdiction, the nature of the matter under investigation or being prosecuted, and the name and address of the disciplinary authority investigating or prosecuting the matter.)

9. Within the past three (3) years, I

      ☒ have not been disciplined

      ☐ have been disciplined

by any court, agency or organization authorized to discipline me as a lawyer. (If so, attach to this application and incorporate by reference a statement specifying the name of the court, agency or organization imposing discipline, the date(s) of such discipline, the nature of the complaint or charge on which discipline was imposed, and the sanction.)

10. Within the last twelve (12) months preceding this application, I

      ☒ have not sought admission pro hac vice under this rule.

      ☐ have sought admission *pro hac vice* under this rule. (If so, attach to this application and incorporate by reference a copy of the order of the tribunal granting or denying your previous application. Such order(s) must include the name of the tribunal, the style of case and the docket number for the case(s) in which you filed an application and whether the application was granted or denied.)

         ☐ Order(s) attached and incorporated by reference.

11. I hereby consent to the jurisdiction of the courts and agencies of the Commonwealth of Virginia and of the Virginia State Bar and I further consent to service of process at any address(es) required by this Rule.

Michigan      P 71945

Case 7:19-cv-00398-GEC   Document 1-1   Filed 05/28/19   Page 40 of 69   Pageid#: 48

12. I agree to review and comply with appropriate rules of procedure as required in the case for which I am applying to appear pro hac vice.

13. I understand and I agree to comply with the rules and standards of professional conduct required of members of the Virginia State Bar.

6- 1- 2017
...............................................
DATE

...............................................
SIGNATURE OF APPLICANT

~~Commonwealth~~/State of ....... Michigan ...............................................

[ ] City [X] County of ....... Wayne ...............................................

Subscribed and sworn to/affirmed before me on this date by the above-named person.

6/1/17
...............................................
DATE

...............................................
NOTARY PUBLIC

My commission expires: ....... 6-14-18 .......

CHERYL E. BALLEW
Notary Public, State of Michigan
County of Wayne
My Commission Expires Jun. 14, 2018
Acting In the County of ....... Wayne .......

4 of 4

Michigan        P 71945

## Supplement to Question 4:

- Name of Party:  David Howard Bennett, counsel unknown at this time

- Name of Party:  Chemsolv, Inc., counsel unknown at this time

Michigan                    P71945

## APPLICATION TO APPEAR *PRO HAC VICE* BEFORE A VIRGINIA TRIBUNAL

I, RICHARD      STEPHEN      BARON      , the
<br>APPLICANT FIRST NAME    MIDDLE NAME    LAST NAME    SUFFIX

undersigned attorney, hereby apply to this tribunal of the Commonwealth of Virginia,

Roanoke City Circuit Court     , to appear as counsel

*pro hac vice* pursuant to Rule 1A:4 of the Rules of the Supreme Court of Virginia.

I further state the following:

1. The case in which I seek to appear *pro hac vice* is styled

   Christopher and Susan Sheldon v Nichols Transport Company, Inc.   , has

   docket number CL16-1171    and is pending in

   Roanoke City Circuit Court   .

   This case

   ☐ is
   <br>☒ is not

   a related or consolidated matter for which I have previously applied to appear *pro hac vice.*

   ☐ I have previously applied to appear *pro hac vice* in the following related or
   consolidated matters:

   a. _____
   <br>    DOCKET NUMBER      COURT NAME

       DATE OF PRO HAC    STYLE OF RELATED OR CONSOLIDATED MATTER
   <br>    VICE APPLICATION

   b. _____
   <br>    DOCKET NUMBER      COURT NAME

       DATE OF PRO HAC    STYLE OF RELATED OR CONSOLIDATED MATTER
   <br>    VICE APPLICATION

   ☐ Additional Sheet attached.

2. 5427 Deerfoot Court, West Bloomfield, MI 48323
   <br>APPLICANT'S RESIDENCE
   <br>38777 Six Mile Road, Suite 300, Livonia, MI 48152
   <br>APPLICANT'S OFFICE ADDRESS

3.  John L. Cooley                                                              25962
    NAME OF LOCAL COUNSEL                                                        VSB NUMBER

    2965 Colonnade Drive, Suite 200, Roanoke, VA  24018
    STREET ADDRESS

    (540) 345-6417      jlcooley@cooleysublett.com                              (540) 343-2451
    FAX NUMBER          EMAIL ADDRESS                                           TELEPHONE NUMBER

4.  CHRISTOPHER and SUSAN SHELDON
    NAME OF PARTY TO CASE

    Carrol Ching, Lichtenstein Law Group, 101 S. Jefferson St, Ste. 400, Roanoke, VA  24011
    NAME AND ADDRESS OF COUNSEL FOR PARTY

    ROBERT and SANDRA SHELDON
    NAME OF PARTY TO CASE

    Carrol Ching, Lichtenstein Law Group, 101 S. Jefferson St, Ste. 400, Roanoke, VA  24011
    NAME AND ADDRESS OF COUNSEL FOR PARTY

    NICHOLS TRANSPORT COMPANY, INC.
    NAME OF PARTY TO CASE

    John Cooley, 2965 Colonnade Drive, Suite 200, Roanoke, VA  24018
    NAME AND ADDRESS OF COUNSEL FOR PARTY

    [X] Additional sheet attached.

5.  Michigan                                  05/20/82                         33798
    COURT TO WHICH APPLICANT IS ADMITTED      DATE OF ADMISSION                BAR #

    Wisconsin                                 11/23/87                         1013525
    COURT TO WHICH APPLICANT IS ADMITTED      DATE OF ADMISSION                BAR #

    [X] Additional sheet attached.

6.  I am a member in good standing and authorized to appear in the courts identified in

    paragraph 5.

7.  I am not currently disbarred or suspended in any state, territory, United States

    possession or tribunal.

8. I ☒ am **not** subject to a pending disciplinary investigation or proceeding by

☐ am subject to a pending disciplinary investigation or proceeding by

any court, agency or organization authorized to discipline me as a lawyer. (If such an investigation or proceeding is pending, attach to this application and incorporate by reference a statement specifying the jurisdiction, the nature of the matter under investigation or being prosecuted, and the name and address of the disciplinary authority investigating or prosecuting the matter.)

9. Within the past three (3) years, I

☒ have not been disciplined

☐ have been disciplined

by any court, agency or organization authorized to discipline me as a lawyer. (If so, attach to this application and incorporate by reference a statement specifying the name of the court, agency or organization imposing discipline, the date(s) of such discipline, the nature of the complaint or charge on which discipline was imposed, and the sanction.)

10. Within the last twelve (12) months preceding this application, I

☒ have **not** sought admission pro hac vice under this rule.

☐ have sought admission *pro hac vice* under this rule. (If so, attach to this application and incorporate by reference a copy of the order of the tribunal granting or denying your previous application. Such order(s) must include the name of the tribunal, the style of case and the docket number for the case(s) in which you filed an application and whether the application was granted or denied.)

☐ Order(s) attached and incorporated by reference.

11. I hereby consent to the jurisdiction of the courts and agencies of the Commonwealth of Virginia and of the Virginia State Bar and I further consent to service of process at any address(es) required by this Rule.

3 of 4

12. I agree to review and comply with appropriate rules of procedure as required in the case for which I am applying to appear pro hac vice.

13. I understand and I agree to comply with the rules and standards of professional conduct required of members of the Virginia State Bar.

.....6|1|17..........                    ..........[signature]..........

DATE                                     SIGNATURE OF APPLICANT


~~XXXXXXXXXX~~/State of ...Michigan..........................................................

[ ] City [X] County of ......Wayne..........................................................

Subscribed and sworn to/affirmed before me on this date by the above-named person.

.....6|1|17..........                    ..........[signature]..........

DATE                                     NOTARY PUBLIC

My commission expires: ...6-14-18........

> CHERYL E. BALLEW
> Notary Public, State of Michigan
> County of Wayne
> My Commission Expires Jun. 14, 2018
> Acting in the County of _Wayne_

## Application to Appear *Pro Hac Vice* Before A Virginia Tribunal – Richard S. Baron

**Supplement to Question 4:**

- Name of Party:   David Howard Bennett, counsel unknown at this time

- Name of Party:   Chemsolv, Inc., counsel unknown at this time

**Supplement to Question 5**

- United States District Court, Eastern District of Michigan – October 1, 1982;

- United States District Court, Western District of Michigan – August 4, 1990;

- United States District Court, District of Colorado – August 11, 2008;

- United States Court of Appeals for the Sixth Circuit – September 24, 1996;

- United States Court of Appeals for the Ninth Circuit – February 27, 2001.

2

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

CHRISTOPHER AND )
SUSAN SHELDON, )
)
And )
)
ROBERT AND )
SANDRA SHELDON, )
)
Plaintiffs, )
) Case No.: CL 16-1171
v. )
)
NICHOLS TRANSPORT COMPANY, INC., )
)
DAVID HOWARD BENNETT, )
And )
CHEMSOLV, INC., )
)
Defendants. )

## ORDER

On this day came the Defendant, Nichols Transport Company, Inc., upon its motion for

admission *pro hac vice* of attorneys Richard S. Baron, Esq. and Benjamin L. Fruchey. Esq. in

this action, and it appearing that Mr. Baron is a member in good standing of the Bars of

Michigan and Wisconsin, and Mr. Fruchey is a member in good standing of the Bar of

Michigan,

It is hereby ADJUDGED, ORDERED and DECREED that the Defendant's Motion be,

and it hereby is granted; and it is further ORDERED that Mr. Baron and Mr. Fruchey shall be

admitted *pro hac vice* in this action as counsel for Defendant Nichols Transport Company, Inc.

Enter this __17th__ day of July 2017.

_____
Judge

A COPY TESTE BRENDA S. HAMILTON, CLERK
By_____
Deputy Clerk

1

I ask for this:

John L. Cooley, Esq. (VSB #25962)
**CooleySublettPearson PLC**
2965 Colonnade Drive, Suite 200
PO Box 20869
Roanoke VA 24018
Telephone: 540-343-2451
Facsimile: 540-345-6417
Email: jlcooley@cooleysublett.com
**Counsel for Defendant**
**Nichols Transport Company, Inc.**



Seen and agreed to:

John E. Lichtenstein, Esq.
Carrol Ching, Esq.
Lichtenstein Law Group, PLC
101 South Jefferson Street, Suite 400
Roanoke, VA 24011
Telephone: 540-912-4429
John.Lichtenstein@lichtensteinlawgroup.com
Carrol.Ching@lichtensteinlawgroup.com
**Counsel for Plaintiff**

2

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| CHRISTOPHER AND<br>SUSAN SHELDON,<br><br>And<br><br>ROBERT AND<br>SANDRA SHELDON,<br><br>     Plaintiffs,<br><br>-vs-<br><br>NICHOLS TRANSPORT COMPANY, INC.,<br><br>DAVID HOWARD BENNETT,<br>And<br>CHEMSOLV, INC.,<br><br>     Defendants. | Case No.: CL 16-1171 |

## STIPULATED PROTECTIVE ORDER

It appearing to this Court that Plaintiffs and Defendants in this action consent to this Protective Order, and by execution of this Order by their respective counsel, the Parties do agree to be bound by its terms as follows:

The terms of this Order shall apply to the parties of this case, namely Plaintiffs and Defendants, and any other person producing or disclosing material in This Action who agrees to be bound by the terms of this Order.

I.     **Definitions and Terms**

    1.     As used in this Order, the following definitions and terms shall apply:

    a)     "Confidential Information" means any Discovery Material that the Producing Party or Protected Person reasonably believes not to be in the public domain and reasonably believes contains any trade secret or other confidential, strategic, research, development, or commercial information, as such terms are used in VA R. Civ. P. 4:1(c), that, if disclosed, would materially affect the party's or Protected Person's business, employment, commercial or financial interests.

1

b) "Plaintiff" or "Plaintiffs" means Christopher and Susan Sheldon, and Robert and Sandra Sheldon.

c) "Defendant" or "Defendants" means Nichols Transport Company, Inc., David Howard Bennett, and Chemsolv, Inc.

d) "Party" or "parties" means the Plaintiffs and/or the Defendants in This Action.

e) "Counsel" means the counsel of record in this action and their law firms as well as (i) other attorneys or consultants employed or retained by such law firms; or (ii) any attorney subsequently retained or designated by a party to appear in This Action.

f) "Protected Person" means any non-party that furnishes any Discovery Material to any party by way of a subpoena.

g) "This Action" means the above-captioned civil action pending in this Court, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

h) "Disclosed" is used in its broadest sense and includes, inter alia, directly or indirectly shown, divulged, revealed, produced, described, transmitted or otherwise communicated, in whole or in part.

i) "Discovery" is defined as the term is used in the Rules of the Supreme Court of Virginia.

j) "Discovery Material" means any documents, answers to interrogatories, responses to requests for admission, deposition testimony, deposition transcripts and exhibits, initial (and supplemental) disclosures, other responses to requests for information, documents, and/or other written information, whether produced voluntarily or involuntarily in the course of This Action or in response to discovery requests in this litigation by any party or Protected Person.

k) "Document" is defined as the term is used in Rule 4:9 of the Rules of the Supreme Court of Virginia.

## II.  Types of Material That May Be Designated Confidential

2.  Any Discovery Material may be designated by a Producing Party or Protected Person as "Confidential" under this Order. Such designation shall constitute a representation to the Court that counsel for the Producing Party or Protected Person believes in good faith that the material so designated constitutes Confidential Information as defined in this Order.

3.  Designation of Discovery Material as "Confidential" shall not relieve a party of its obligation to provide an appropriate privilege log.

## III.    Designation of Discovery Material as Confidential

4.    Any Discovery Material or information produced in discovery in This Action, but not covered by paragraphs 2-3 above, that are to be designated "Confidential" may be so designated by the Producing Party or Protected Person by furnishing a separate written notice to the undersigned counsel for the party receiving such documents, material or information at the time of their production specifically identifying the portions of the documents or materials containing the Confidential Information, unless the entire document is designated as Confidential, and by providing copies of the documents, material or information so designated that are stamped with the stamp "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER." This stamp shall be affixed to each page of the document containing such material and shall not interfere with the legibility of designated documents. With respect to electronic documents, the Producing Party or Protected Person at the time such documents are produced shall specify in writing that the material is designated as Confidential.

5.    Inadvertent production of or failure to designate any information as Confidential shall not be deemed a waiver of the Producing Party's or Protected Person's claim of confidentiality as to such information, and the Producing Party or Protected Person may thereafter designate such information as Confidential as appropriate.    Upon receipt of an appropriate designation of such information as Confidential, receiving parties shall make reasonable efforts to assure that the information thereafter is treated as Confidential in accordance with the provisions of this Order.

## IV.    Permissible Uses of Discovery Material

6.    All persons obtaining access to Discovery Material produced in connection with This Action shall use such Discovery Material only for purposes of This Action, including any appeal of the Court's ruling, and any subsequent proceedings, and shall not use such Discovery Material for any other purpose, including the furtherance of any other claims, any business,

3

commercial, competitive, personal or other purpose or in any other administrative or judicial proceeding.

7.       Nothing herein shall impose any restrictions on the use or disclosure by a party or witness of documents, material or information obtained by such party or witness independently of the discovery proceedings in This Action, whether or not such documents, material or information are also obtained through discovery proceedings in This Action.

8.       Nothing herein shall prevent disclosure of Confidential Information with the consent of counsel for the designating party or Protected Person.

9.       Except as otherwise authorized by this Order, Confidential Information may be disclosed only to the following persons:

   a)    the Court;

   b)    parties and their insurers, Counsel and their employees, including contract employees;

   c)    outside or private counsel for the parties;

   d)    associated personnel of any person within categories 9.a. through 9.c. for whom access to Confidential Information is necessary to assist such persons in This Action, including any Court personnel assisting the Court, litigation assistants, paralegals, secretarial or other clerical personnel, and stenographers or other persons involved in taking or transcribing testimony in This Action;

   e)    consultants, experts or litigation support services, including outside copying services, retained by a party for the purpose of assisting that party in This Action, and principals and employees of the firm with which consultants or experts are associated;

   f)    authors or recipients of the designated Confidential Information;

   g)    Employees of or counsel for the party or Protected Person producing such Confidential Information;

   h)    Persons who have had, or whom any counsel for any party in good faith believes to have had, prior access to Confidential Information, or who have been participants in a communication that is the subject of the Confidential Information and from whom verification of or other information about that access or participation is sought, solely to the extent of disclosing such information to which they have or may have had access or that is the subject of the communication in which they have or may have participated, except that, unless and until counsel confirms that any such persons have had access or were participants, only as

4

much of the information may be disclosed as may be necessary to confirm the person's access or participation;

i)      Other persons not included in the above subparagraphs who may testify as a witness, either at a deposition or at a court proceeding, for the purpose of assisting in the preparation or examination of the witness or potential witness; and

j)      Any person as further ordered by this Court;

k)      Mediators, settlement conference judges and their staff; and

l)      Any other person to whom the producing person expressly agrees in writing, after the name of same has been disclosed.

10.      Persons described in subparagraphs 9.b. and 9.c. (and their associated personnel) shall be deemed bound by the terms of this Order upon its entry by the Court. Persons described in subparagraphs 9.b. and 9.c. should advise their associated personnel of this Order and the terms of the above stated agreement prior to providing their associated personnel access to Confidential Information.

11.      Each individual described in Paragraph 10 above, to whom Confidential Information is disclosed, shall not disclose that information to any other individual, except as provided in this Order, or use it for any purpose other than in connection with This Action. Before any Confidential Information may be disclosed to any person described in subparagraphs 9e., 9.h. and 9.i. above, he or she shall have first read this Order or shall have otherwise been instructed in his or her obligations under the Order by counsel for a party.

12.      Notwithstanding any of the foregoing provisions, this Order has no effect upon, and its scope shall not extend to, any person's use of its own Confidential Information.

## V.      Deposition Procedures

13.      Where testimony regarding Confidential Information is elicited, all transcripts and exhibits shall be treated as if designated Confidential for a period of ten (10) business days after the transcript is available from the court reporter. Any deponent or counsel for that deponent may designate during the deposition or during the ten-business-day period after the transcript is available from the court reporter any portion of the transcript as Confidential by denominating by

5

page and line, and by designating any exhibits, that are to be considered Confidential pursuant to the criteria set forth in this Order. Such designation shall be communicated to all parties and to the court reporter. The court reporter shall mark the face of the transcript accordingly. Transcript portions and exhibits designated in accordance with this paragraph shall be disclosed only in accordance with this Order.

## VI.    Challenges to Confidential Designations

14.    If any party disagrees with the designation by the Producing Party or Protected Person of any Discovery Material or testimony as Confidential Information, then the parties to the dispute will attempt first to resolve the dispute on an informal good faith basis before presenting the dispute to the Court. All items objected to shall continue to be treated as Confidential pending resolution of the parties' dispute by the parties or by order of the Court. If the dispute cannot be resolved informally, either the designating party or the challenging party may, on reasonable notice, apply for an appropriate ruling from the Court in accordance with Section VII herein. The Producing Party or Protected Person bears the burden of persuading the Court that the information is in fact Confidential Information within the definition of that term set forth above. In the case of material provided by a Protected Person, the party contesting the confidentiality designation shall provide reasonable notice to the Protected Person that the matter has been referred to the Court. The parties agree that any disputes concerning whether any materials are in fact "confidential" shall be submitted to the Court or otherwise as the Court directs.

15.    Entering into, agreeing to, and/or complying with the terms of this Order shall not: (a) operate as an admission by any party or Protected Person that any particular documents, material or information contain or reflect currently valuable trade secrets or proprietary or commercial information; or (b) prejudice in any way the right of a party at any time: (i) to seek a determination by the Court of whether any particular document, item of material or piece of information should be subject to the terms of this Order; (ii) to seek relief on appropriate notice

6

from any provision(s) of this Order, either generally or as to any particular document, item of material or piece of information; (iii) to object to any discovery request, including the right to assert that no discovery should be had of certain documents or information; or (iv) to seek documents or other information from any source.

**VII.     Filing Under Seal**

16.     All Confidential Information contained or discussed in any pleading, motion, exhibit or other paper filed with the Court shall be accompanied by a Motion Under Seal. The Court shall then determine what, if any, portions of filing shall be filed under seal.

**VIII.    Use of Confidential Information at any Hearing**

17.     The parties shall confer and attempt to agree, before any hearing, on the procedures under which Confidential Information may be introduced into evidence or otherwise used at such hearing. Upon reaching agreement, the parties shall give notice of the terms of such agreement to each Protected Person producing any Confidential Information that may be used or introduced at any such hearing. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential Information at any such hearing upon reasonable notice to all parties and Protected Persons who have produced such information. The parties shall provide Protected Persons with notice of potential use at any hearing of any Confidential Information produced by them.

**IX.     Procedures Upon Termination of Action**

18.     Within 60 business days following the running of any applicable time to appeal any order or ruling terminating This Action, the parties shall (i) return to the person who produced such materials all copies of all Confidential Information obtained through discovery in This Action, provided however that such Confidential Information and Confidential Documents may be retained in the files of the parties insurers and destroyed pursuant to those entities regular retention policies (ii) certify to that person that all such materials have been destroyed, or (iii) where mutually agreeable, enter into a protective agreement with the Producing Party to

7

provide assurances that to the extent the information is intentionally, negligently, or otherwise released, disseminated, or otherwise disclosed outside of this litigation, the retaining party/individual shall be liable to the Producing Party for all damages arising from such release, dissemination, or disclosure.

19. After the running of any applicable time to appeal any order or ruling terminating This Action, the producing parties or Protected Person may request that any party return or destroy any Discovery Material the Producing Party or Protected Person has provided. Upon such request, the party shall comply provided however that such Confidential Information and Confidential Documents may be retained in the files of the parties insurers and destroyed pursuant to those entities regular retention policies, or where mutually agreeable, enter into a protective agreement with the Producing Party to provide assurances that to the extent the information is intentionally, negligently, or otherwise released, disseminated, or otherwise disclosed outside of this litigation, the retaining party/individual shall be liable to the Producing Party for all damages arising from such release, dissemination, or disclosure.

**X.    Miscellaneous**

20. Notwithstanding paragraphs 18 and 19, counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Confidential Information. Any such archival copies that contain or constitute Confidential Information remain subject to this Order.

21. In the event any party is served with a subpoena or civil investigative demand requesting production of Confidential Information, the recipient shall immediately notify the source party of such subpoena or civil investigative demand and it will be the obligation of the source party (who previously designated the information/documents as Confidential Information) to interpose and defend any objection to production of Confidential Information. No Confidential

8

Information shall be produced by the party served with the request until notice is provided to the source party.

22. This Order shall not affect the right of any party or Protected Person to oppose production of Discovery Material on any ground permitted by the Rules of the Supreme Court of Virginia, including any applicable privilege. Moreover, this Order shall not affect the scope of discovery by any party that is not otherwise proper under the Rules of the Supreme Court of Virginia.

23. Nothing in this Order shall prejudice the right of any party or Protected Person to move the Court to broaden or restrict the rights of access to and use of particular Discovery Material, or to seek modifications of this Order upon due notice to all other parties and affected Protected Persons.

24. All persons governed by this Order, by reviewing Confidential Information, or seeking the protections of this Order for Discovery Material, shall agree to the jurisdiction of this Court over their person for the purpose of any action seeking to enforce the terms and conditions of this Order, or for any action for contempt for violation of the terms of this Order.

25. This Order may be amended by the agreement of counsel for the Parties in the form of a proposed written amendment to the Order. Such proposed modifications shall be submitted to the Court for approval. The parties may otherwise seek amendment to this Order by motion.


Upon entry, the Clerk is directed to provide attested copies of this Order to counsel of record

IT IS SO ORDERED THIS 27th day of July 2018.

_____
Circuit Court Judge

9

A COPY TESTE BRENDA S. HAMILTON, CLERK
By_____

IT IS SO ORDERED, this _____ day of July 2018.

SO STIPULATED:


By: _____   By: _____
    John E. Lichtenstein (VSB No. 27048)       Richard S. Baron (*admitted pro hac vice*)
    Gregory L. Lyons (VSB No. 24037)           Benjamin L. Fruchey (*admitted pro ha vice*)
Lichtenstein Law Group, PLC              Foley, Baron, Metzger & Juip, PLLC
Liberty Trust Building, Suite 400        38777 Six Mile Road, Suite 300
101 South Jefferson Street               Livonia, MI 48152
Roanoke, Virginia 24004-0601             *Attorneys for Defendant Nichols Transport*
*Attorneys for Plaintiffs*



By: _____   By: _____
    Craig L. Sarner (VSB #37384)               John L. Cooley (VSB #25962)
Bonner, Kiernan Trebach & Crociata, LLP  Law Office of Cooley and Associates, PLC
1233 20th Street, N.W., Suite 800        40 British Woods Drive, Suite 101
Washington, D.C. 20036                   P.O. Box 19687
*Attorneys for Defendant ChemSolv, Inc.* Roanoke, VA 24019
                                         *Co-Counsel for Defendant Nichols Transport*



By: _____
    John K. Messersmith, IV (VSB No. 26403)
Kalbaugh Pfund & Messersmith
901 Moorefield Park Drive
Richmond, VA 23236
*Attorneys for Defendant David Howard
Bennett*

10

IT IS SO ORDERED, this _____ day of June 2018.

SO STIPULATED:


By:_____
    John E. Lichtenstein (VSB No. 27048)
    Gregory L. Lyons (VSB No. 24037)
Lichtenstein Law Group, PLC
Liberty Trust Building, Suite 400
101 South Jefferson Street
Roanoke, Virginia 24004-0601
*Attorneys for Plaintiffs*


By:_____
    Craig L. Sarner (VSB #37384)
Bonner, Kiernan Trebach & Crociata, LLP
1233 20th Street, N.W., Suite 800
Washington, D.C. 20036
*Attorneys for Defendant ChemSolv, Inc.*


By:_____
    John K. Messersmith, IV (VSB No. 26403)
Kalbaugh Pfund & Messersmith
901 Moorefield Park Drive
Richmond, VA 23236
*Attorneys for Defendant David Howard
Bennett*

By:_____
    Richard S. Baron (*admitted pro hac vice*)
    Benjamin L. Fruchey (*admitted pro ha vice*)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152
*Attorneys for Defendant Nichols Transport*


By:_____
    John L. Cooley (VSB #25962)
Law Office of Cooley and Associates, PLC
40 British Woods Drive, Suite 101
P.O. Box 19687
Roanoke, VA 24019
*Co-Counsel for Defendant Nichols Transport*

CIRCUIT COURT
Received Order From

WDB ☑      JCC ☐
DBC ☐      CND ☐

On    JUL 3 0 2018

By _Denise Stephens_
        Deputy Clerk
        City of Roanoke

Regarding the decree or order to which
this stamp is affixed. I certify that on
_____8/2_____, 20 _18_
I delivered a certified copy to:

_E. Lyons, C Sarner, G Messeramier, R Baron,_
_Nolly Paige_                    _g. Cooley_
Deputy Clerk, Circuit Court, City of Roanoke

VIRGINIA:

### IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | | |
|---|---|---|
| CHRISTOPHER SHELDON and | ) | |
| SUSAN SHELDON, et al. | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No.: CL16-1171** |
| | ) | |
| NICHOLS TRANSPORT COMPANY, INC., | ) | |
| DAVID HOWARD BENNETT, | ) | |
| and | ) | |
| CHEMSOLV, INC., | ) | |
|     Defendants. | ) | |

### PLAINTIFFS' MOTION FOR NONSUIT SOLELY AS TO DEFENDANT CHEMSOLV, INC.

The Plaintiffs, by counsel and pursuant to Virginia Code § 8.01-380 (1950, as amended), respectfully move the Court for a nonsuit in this action, solely as to defendant Chemsolv, Inc. In support, Plaintiffs state as follows:

1.     There are no pending counterclaims, crossclaims or third-party claims.

2.     No dispositive motions are in the hands of the Court for decision.

3.     No prior nonsuits have been taken in this matter.

4.     Plaintiffs therefore are entitled as a matter of right under Va. Code § 8.01-380 to nonsuit Defendant Chemsolv, Inc., without prejudice to their right under applicable law to refile against Defendant Chemsolv, Inc. and without prejudice to their claims against the remaining defendants, Nichols Transport Company, Inc. and David Howard Bennett.

**WHEREFORE**, Plaintiffs respectfully move for a nonsuit solely as to Defendant Chemsolv, Inc., and that this action remain on the Court's active docket under the amended style of *Christopher Sheldon and Susan Sheldon et al. v. Nichols Transport Company, Inc. and David Howard Bennett.*

LICHTENSTEIN
LAW GROUP pLC
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

Respectfully submitted,

**CHRISTOPHER SHELDON and
SUSAN SHELDON, et al.**

By: _____
　　　　　　Counsel

John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
Liberty Trust Building, Suite 400
101 South Jefferson Street (24011)
P.O. Box 601
Roanoke, Virginia 24004-0601
Tel:　　(540) 343-9711
Fax:　　(540) 343-9713
John.Lichtenstein@lichtensteinlawgroup.com
Greg.Lyons@lichtensteinlawgroup.com
Joanna.Meyer@lichtensteinlawgroup.com
　　　　*Counsel for the plaintiffs*

## CERTIFICATE OF SERVICE

I certify that true copies of foregoing were mailed (and courtesy copies emailed) to defense counsel on April 16, 2019, as follows:

Craig L. Sarner
csarner@bonnerkiernan.com
Bonner Kiernan Trebach & Crociata LLP
1233 20th Street, N.W., Suite 800
Washington, DC 20036
*Counsel for Defendant Chemsolv, Inc.*

John K. Messersmith, IV
john.messersmith@kpmlaw.com
Porter Peery
porter.peery@kpmlaw.com
KALBAUGH PFUND & MESSERSMITH
901 Moorefield Park Drive
Richmond, VA 23236
*Counsel for Defendant David Howard Bennett*

LICHTENSTEIN
LAW GROUP P.L.
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

Richard S. Baron
rbaron@fbmjlaw.com
Benjamin L. Fruchey
bfruchey@fbmjlaw.com
FOLEY, BARON, METZGER & JULIP, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152
*Counsel for Defendant Nichols Transport Company, Inc.*

John L. Cooley
jlcooley@cooleyfirm.com
Cooley and Associates PLC
40 British Woods Drive, Suite 101
P.O. Box 19687
Roanoke, VA 24019
*Counsel for Defendant Nichols Transport Company, Inc.*

Counsel for Plaintiffs

LICHTENSTEIN
LAW GROUP<sub>PL</sub>
ATTORNEYS AND COUNSELORS AT LAW
P.O. Box 601
Roanoke, VA 24004-0601

5

## IN THE CIRCUIT COURT FOR THE CITY OF ROANOKE

| | |
|---|---|
| **CHRISTOPHER SHELDON and** )<br>**SUSAN SHELDON, et al.** )<br>    **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**NICHOLS TRANSPORT COMPANY, INC.,** )<br>**DAVID HOWARD BENNETT,** )<br>**and** )<br>**CHEMSOLV, INC.,** )<br>    **Defendants.** ) | **Case No.: CL16-1171** |

## <u>ORDER OF NONSUIT SOLELY AS TO DEFENDANT CHEMSOLV, INC.</u>

Plaintiff, by counsel, has moved the Court pursuant to Virginia Code § 8.01-380, for a nonsuit as to defendant Chemsolv, Inc. only. Accordingly, and it appearing appropriate to the Court to do so, it is hereby **ORDERED** that Plaintiff's Motion for Nonsuit Solely as to Defendant Chemsolv, Inc. shall be and it hereby is **GRANTED**. Defendant Chemsolv, Inc. only, and no other party, is hereby nonsuited, without prejudice to the Plaintiff's refiling against Chemsolv, Inc. as provided for in applicable law, and without prejudice to the Plaintiff's claims against the remaining defendants, Nichols Transport Company, Inc. and David Howard Bennett. It is further **ORDERED** that this matter shall continue with regard to the remaining defendants, Nichols Transport Company, Inc. and David Howard Bennett, under the amended style of *Christopher Sheldon and Susan Sheldon, et al. v. Nichols Transport Company, Inc. and David Howard Bennett.*

This matter is continued on the Court's active docket.

Upon entry, the Clerk is directed to provide an attested copy of this Order to counsel of record.

**ENTER** this _____ 8th _____ day of _____ May _____, 2019.

Jcc

_(signature)_
Judge

**WE ASK FOR THIS:**

_(signature)_

John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
P.O. Box 601
Roanoke, Virginia 24004-0601
  _Counsel for the plaintiffs_

_Craig L. Sarner_

Craig L. Sarner
Bonner Kiernan Trebach & Crociata LLP
1233 20th Street, NW, 8th Floor
Washington, DC 20036
  _Counsel for Chemsolv, Inc._

**SEEN:**

A COPY TESTE BRENDA S. HAMILTON, CLERK
By _(signature)_ Deputy Clerk

_____
John L. Cooley
Law Office of Cooley and Associates PLC
40 British Woods Drive, Suite 101
P.O. Box 19687
Roanoke, VA 24019

_Richard S. Baron_
_____
Richard S. Baron (MI P33798)
(admitted _pro hac vice_)
Benjamin L. Fruchey (MI P71945)
(admitted _pro hac vice_)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152
  _Counsel for Nichols Transport Company, Inc._

_____
Porter Peery
Kalbaugh, Pfund & Messersmith, P.C.
2840 Electric Road, #111
Roanoke, VA 24018
  _Counsel for David Howard Bennett_

Page 2 of 2

**WE ASK FOR THIS:**

_____
John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
P.O. Box 601
Roanoke, Virginia 24004-0601
          *Counsel for the plaintiffs*


_____
Craig L. Sarner
Bonner Kiernan Trebach & Crociata LLP
1233 20th Street, NW, 8th Floor
Washington, DC 20036
          *Counsel for Chemsolv, Inc.*

**SEEN:**

_____
John L. Cooley
Law Office of Cooley and Associates PLC
40 British Woods Drive, Suite 101
P.O. Box 19687
Roanoke, VA 24019

_____
Richard S. Baron  (MI P33798)
(admitted *pro hac vice*)
Benjamin L. Fruchey (MI P71945)
(admitted *pro hac vice*)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152

          *Counsel for Nichols Transport Company, Inc.*

_____
Porter Peery
Kalbaugh, Pfund & Messersmith, P.C.
2840 Electric Road, #111
Roanoke, VA 24018
          *Counsel for David Howard Bennett*

_____
                                    Judge

**WE ASK FOR THIS:**

_____
John E. Lichtenstein (VSB #27048)
Gregory L. Lyons (VSB #24037)
Joanna M. Meyer (VSB #86427)
LICHTENSTEIN LAW GROUP PLC
P.O. Box 601
Roanoke, Virginia 24004-0601
        *Counsel for the plaintiffs*

_____
Craig L. Sarner
Bonner Kiernan Trebach & Crociata LLP
1233 20th Street, NW, 8th Floor
Washington, DC 20036
        *Counsel for Chemsolv, Inc.*

SEEN:
_____
John L. Cooley  *(USB # 25962)*
Law Office of Cooley and Associates PLC
40 British Woods Drive, Suite 101
P.O. Box 19687
Roanoke, VA 24019

_____
Richard S. Baron  (MI P33798)
(admitted *pro hac vice*)
Benjamin L. Fruchey (MI P71945)
(admitted *pro hac vice*)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152

        *Counsel for Nichols Transport Company, Inc.*

_____
Porter Peery
Kalbaugh, Pfund & Messersmith, P.C.
2840 Electric Road, #111
Roanoke, VA 24018
        *Counsel for David Howard Bennett*

CIRCUIT COURT
Received Order From

WDB ☐     JCC ☐
DBC ☐     CND ☐

On   MAY 09 2019

By _Denise Stephens_
Deputy Clerk
City of Roanoke

Regarding the decree or order to which
this stamp is affixed. I certify that on
_____ 5/15 _____, 20 19
I delivered a certified copy to:
Lichtenstein, Sarner, Baron, Peery, Cooley
Denise Stephens
Deputy Clerk Circuit Court, City of Roanoke